IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIDGET M. MCDONNELL          *
                              *
v.                            *    Civil Action No. WMN-11-3284
                              *
DEPUTY KELLY                  *
HEWITT-ANGLEBERGER <u>et al.</u>     *
                              *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

<u>**MEMORANDUM**</u>

Before the Court is Defendants Frederick County and Sheriff
Jenkins' Motion to Dismiss, or in the Alternative, to Bifurcate,
ECF No. 8. The motion has been fully briefed. Upon a review of
the papers and applicable case law, the Court determines that no
hearing is necessary, Local Rule 105.6, and that the motion to
dismiss will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff has filed suit against the Board of County
Commissioners for Frederick County, Maryland (County), Sheriff
Charles Jenkins (Sheriff Jenkins) and Deputy Kelly Hewitt-
Angleberger (Hewitt-Angleberger), based upon an alleged incident
involving the arrest and detention of Plaintiff on April 22,
2009, by Hewitt-Angleberger.[1]

---

[1] Plaintiff also named the State of Maryland as a defendant, but
voluntarily dismissed this party on February 2, 2012. <u>See</u> ECF
No. 12.

According to the Complaint, Deputy Sheriff Hewitt-Angleberger was dispatched to Plaintiff's home on April 22, 2009, after a report that two of Plaintiff's granddaughters had been kidnapped.  Plaintiff informed the Deputy that the girls had not been at her house since April 19, 2009.  Plaintiff also advised that the girls' mother, Andrea Longnecker, had recently been arrested, and subsequently convicted, for selling drugs. Soon after, two other deputy sheriffs arrived on the scene.

It appears that at some point Ms. Longnecker arrived at the house with a male companion.  Plaintiff, Ms. Longnecker, and the deputies conversed and Plaintiff made phone calls to two of her other daughters in an attempt to locate the children. Eventually the deputies began to depart.  As they did, Plaintiff left her house to investigate the male with whom Ms. Longnecker had arrived.  Plaintiff recognized the individual and advised the deputies that he was a drug dealer.

In response, Plaintiff alleges, Hewitt-Angleberger swore at Plaintiff, told her to get back into her house, and violently shoved her in the chest.  When Plaintiff turned around to comply, Hewitt-Angleberger again violently shoved her from behind, knocking her to the ground.  Plaintiff got up, and Hewitt-Angleberger continued to yell at her to get back inside. Plaintiff replied, "Do not touch me," and then was placed under arrest.  Plaintiff advised the deputies that she believed her

2

neck had been broken when she was shoved to the ground, but the deputies ignored her.

Plaintiff alleges that as a result of the "unnecessary brutal conduct of Deputy Kelly Hewitt-Angleberger" she suffered lacerations to her feet and two herniated discs in her neck which required a cervical discectomy and two-level fusion. Plaintiff further alleges that Hewitt-Angleberger filed a false criminal charge against her in an attempt to justify and cover up the misconduct, and also alleges that the deputies were deliberately indifferent to her serious medical needs while she was in police custody.

Plaintiff has brought claims against all Defendants under 42 U.S.C. § 1983 for excessive force, deliberate indifference to serious medical needs, and deprivation of federal rights, in addition to tort claims for assault and battery, false imprisonment, malicious prosecution, and violation of her Maryland Constitutional rights.  Defendant County and Defendant Sheriff Jenkins have filed a motion to dismiss all claims against them, and Hewitt-Angleberger has answered the Complaint.

## II. LEGAL STANDARD

In evaluating a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept as true all well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most

favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  At the same time, the complaint must contain "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).  This pleading standard demands "more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Facts must be evaluated in context, but courts are not bound to accept as true "a legal conclusion couched as a factual allegation."  Id.

## III. DISCUSSION

### A. Claims Against the County

#### i.  § 1983 Claims

In Counts I through III, Plaintiff alleges that the County should be held liable under 42 U.S.C. § 1983 for "Excessive Force," "Deliberate Indifference to Serious Medical Needs," and "Deprivation of Federal Rights."  It appears that Plaintiff

4

seeks to hold the County liable under § 1983 on a theory of respondeat superior for the conduct of Hewitt-Angleberger and liable in its own right for condoning a policy, practice or custom of police misconduct.  Insofar as Plaintiff attempts to plead a claim holding the County liable for Hewitt-Angleberger's conduct, such claim is dismissed because the law is clear that a governmental entity cannot be held liable under § 1983 on a theory of respondeat superior.  See Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691 (1978).  Insofar as Plaintiff attempts to plead a policy or practice claim against the County, such claim is dismissed because Plaintiff has failed to plead sufficient facts, as required by Twombly and Iqbal, to support such a claim.

Pursuant to Monell, a governmental entity can only be held liable under § 1983 if the constitutional violation at issue is the result of an official policy, custom or practice.  436 U.S. 658 (1978).  Plaintiff alleges that the County "permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable and illegal use of physical force by police officers upon detainees and/or arrestees."  Compl. at ¶ 29.  She identifies this pattern and practice as "police brutality," and alleges that it is the foreseeable result of the County's maintenance of a "thoroughly deficient system of review of brutality charges which has failed to identify instances of

brutality." Id. at ¶ 30.  This deficient system of review, in

addition to the alleged "grossly inadequate training pertaining

to the law of permissible use of force by police officers,"

means that officers do not face repercussions for misconduct,

and results in officers believing that "unnecessary, illegal use

and application of brutal physical force [is] permissible." Id.

at ¶ 32, 34.  These allegations essentially point to two

specific policies or customs for which Plaintiff alleges the

County should be held liable: (1) a "condoned custom" of using

excessive force and covering it up with false charges, and (2) a

deficient training system pertaining to the use of force.  See

Opp'n at 8-9.

     To prevail on a Monell claim, a plaintiff must "adequately

plead and prove the existence of an official policy or custom

that is fairly attributable to the municipality and that

proximately caused the deprivation of [her] rights." Jordan by

Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994); Monell, 436

U.S. at 691.  The existence of a "custom" may be found in

"persistent and widespread practices of municipal officials

which although not authorized by written law, are so permanent

and well-settled as to have the force of law." Spell v.

McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (internal

quotations omitted) (citing Adickes v. S.H. Kress & Co., 398

U.S. 144, 167-168 (1970)).  Such a custom may be attributed to a

local government if the duration and frequency of the practices
rises to a level so that the governing body may be deemed to
have constructive knowledge that the practices have become
customary among its employees.  Id. at 1386.  "Constructive
knowledge may be evidenced by the fact that the practices have
become so widespread and flagrant that in the proper exercise of
its official responsibilities the governing body should have
known of them."  Id.

Plaintiff argues that she has alleged sufficient facts to
state a "condoned custom" claim.  The Court disagrees.  In an
effort to establish that a pattern of brutality exists,
Plaintiff names two civilians who were harmed as a result of
alleged police brutality.  The existence of a total of three
isolated incidents (including Plaintiff's incident) does not
demonstrate sufficient duration or frequency to impute
constructive knowledge of a custom of brutality to the County.
See Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999) (A
"meager history of isolated incidents" does not establish a
municipal custom); Drewry v. Stevenson, No. WDQ-09-2340, 2010 WL
93268 (D. Md. Jan. 6, 2010) (dismissing claims for failure to
allege sufficient facts to demonstrate pattern or practice).
Moreover, the allegations regarding the two other incidents of
police brutality are so threadbare that the Court cannot
ascertain if they occurred under similar circumstances, involved

the same or different deputies, or occurred in close temporal proximity to each other.[2]  As these facts do not allow the Court to draw the reasonable inference that the County is liable for a "condoned custom," such claims must be dismissed.

Plaintiff's allegations regarding deficient training are similarly insufficient.  As the Supreme Court recently stated,

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. . .  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact.  Only then can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

Connick v. Thompson, -- U.S. --, 131 S. Ct. 1350, 1359-1360 (2011)(internal quotations and citations omitted).  "Deliberate indifference" is a stringent standard, which is only met if Plaintiff pleads facts such that the Court may draw a reasonable inference that (1) the County has actual or constructive notice

---

[2] As the County provided docket numbers for past litigation related to these two incidents in its Reply brief, the Court was able to review the allegations in the respective cases.  The incident involving Jarell Gray occurred on November 18, 2007.  No. WDQ-08-1380, ECF No. 14.  Mr. Gray died after being tasered by Deputy Sheriff Torres.  The incident involving Carl Drewry, III, occurred on May 8, 2008, and Mr. Drewry suffered a broken arm after being shoved to the ground by Deputy Sheriff Stevenson.  No. WDQ-09-2340, ECF No. 37.  The Court's review of these pleadings does not affect its conclusion that Plaintiff has failed to plead sufficient facts to support a Monell claim against the County.

of a deficiency in its training program that causes its employees to violate citizens' constitutional rights and (2) that despite this knowledge, it has chosen to retain that system.  See id. at 1360; see also City of Canton v. Harris, 489 U.S. 378, 388-389 (1989).  As stated above, pointing to a total of three incidents of alleged police brutality over a period of two and a half years is insufficient to demonstrate a pattern that could reasonably put the County on constructive notice of a deficiency in the training program.  Moreover, Plaintiff's allegations regarding inadequate training are purely conclusory and point to no specific facts about the nature of the training of sheriff's officers by the County or that the County deliberately and consciously retained the allegedly deficient program.[3]

---

[3] The Court also notes that the Complaint does not explain the relationship between the County and the Sheriff's Office or endeavor to explain how the County has authority to establish the policies or customs for the Sheriff's Office.  In fact, in the paragraphs alleging the "Policies, Practices and Customs of the Sheriff's Department," Plaintiff repeatedly uses the terminology "police officer," despite the fact that the conduct at issue was perpetrated by a deputy sheriff.  See Compl. at ¶¶ 28-34.  While both police officers and deputy sheriffs engage in law enforcement functions and often work cooperatively, they hold distinct offices.  In Maryland, the sheriff is a "State constitutional officer whose duties are subject to control by the General Assembly."  Rucker v. Harford County, 558 A.2d 399, 402 (Md. 1989); see also Md. Decl. Rts. Art. IV, § 44; Md. Code Ann., Cts. & Jud. Proc. § 2-301, et seq.  "Because a deputy sheriff functions as the alter ego of the sheriff, and exercises the same authority," this position too is a state office.  Id. Therefore, when engaged in law enforcement function, sheriffs

For these reasons, the § 1983 claims plead against the County in Counts I, II and III will be dismissed.[4]

**ii.  State Tort Claims**

In Counts IV through VII, Plaintiff alleges that the County is subject to tort damages for Hewitt-Angleberger's conduct in detaining, assaulting, battering and maliciously prosecuting Plaintiff.  The County argues that these claims should be dismissed because (1) it cannot be held liable for the acts of Hewitt-Angleberger because she is an employee of the State, not the County, and (2) it has governmental immunity for state tort claims.  Plaintiff does not address either of these arguments in her Opposition brief.

The County is correct in its assertion that Hewitt-Angleberger, while acting in the course of her duties as a deputy sheriff, is a State employee for whose acts it cannot be held liable.  See Boyer v. State, 294 A.2d 121, 128 (Md. 1991) (holding that Charles County deputy sheriffs are State employees for whom County cannot be held liable); Rucker v. Harford

_____

and deputy sheriffs are considered state employees, not county employees.  Id.; see also Ritchie v. Donnelly, 597 A.2d 432, 438 (Md. 1991).  A municipal police force, on the other hand, is created by, and subject to control of, a municipality.  See, e.g., City of Frederick, Md. Code of Ordinances, Art. XVI; Brunswick City Charter, Art. I, § 16-3(8).

[4] Defendant requested that in the event the § 1983 claims were not dismissed, the case should be bifurcated.  Plaintiff opposed this request.  As these claims will be dismissed, the Court need not reach this issue.

County, 558 A.2d 399, 407 (Md. 1989) (holding that Harford County does not bear common-law liability for the tortious acts of the Sheriff or deputy Sheriffs, who are State employees).  As such, the common law and constitutional tort claims against the County for Hewitt-Angleberger's actions will be dismissed.

Alternatively, the common law tort claims may be dismissed because they are barred by the County's governmental immunity.[5] Maryland's counties are immune from tort liability if the allegedly tortious conduct occurred in the exercise of a "governmental function."  Austin v. City of Baltimore, 405 A.2d 255, 256 (Md. 1979).  The operation of a police force is a governmental function, so a county is immune as to common law tort claims asserted against it based on torts committed by its law enforcement officers.  DiPino, 729 A.2d at 369-370 (Md. 1999); see also Mora v. City of Gaithersburg, 462 F. Supp. 2d 675, 697 (D. Md. 2006); Williams v. Prince George's Cnty., 157 F. Supp. 2d 596, 604 (D. Md. 2001).  As the County's alleged tort liability arises solely from the conduct of Hewitt-Angleberger in the course of her law enforcement duties, insofar as it could be held liable for the conduct of a state law enforcement official (see supra), the County is immune.

---

[5] The Court notes that governmental immunity does not apply to constitutional tort claims.  See Prince George's Cnty. v. Longtin, 19 A.3d 859, 885-86 (Md. 2011) (citing DiPino v. Davis, 729 A.2d 354, 372(Md. 1999)).

For these reasons, the County's motion to dismiss Counts IV through VII will be granted.

**B. Claims Against Sheriff Jenkins**

**i.   § 1983 Claims**

Plaintiff has filed suit against Sheriff Jenkins in both his individual and his official capacity, and alleges that "at all times relevant herein, [Sheriff Jenkins] was acting within the course and scope of his employment with Frederick County as its chief law enforcement officer."  Compl. at ¶ 8.  Plaintiff does not allege that Sheriff Jenkins was present at any time during the alleged assault or during the time in which the deputies were indifferent to her "serious medical needs."

Sheriff Jenkins argues that the Counts I through III seeking to impose liability on him in his official and individual capacities under § 1983 should be dismissed. Plaintiff disagrees, and argues that Sheriff Jenkins can be held liable under § 1983 both as a local official and as Deputy Hewitt-Angleberger's supervisor.

The parties contest whether Sheriff Jenkins acting in his official capacity should be considered a State official or a local county official.  For purposes of the § 1983 claims, this is a distinction without a difference as the claims will be dismissed either way.  If he is a State official, then the § 1983 claims must be dismissed because a state official acting in

12

his official capacity is not a "person" who can be sued for damages under § 1983.  See <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  If he is a local county official, then the claims must be dismissed because a claim against him in his official capacity amounts to a claim that he was the "duly delegated policy-maker for the county," making the claim, therefore, effectively a claim against the County which will fail for the same lack of factual support that causes the § 1983 claims plead directly against the County to fail.  See <u>Revene v. Charles Cnty. Comm'rs</u>, 882 F.2d 870, 874 (4th Cir. 1989); <u>See also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985); <u>Brandon v. Holt</u>, 469 U.S. 464, 471-73 (1985); <u>Spell</u>, 824 F.2d at 1396 & n.13.  Therefore, the § 1983 claims pled against Sheriff Jenkins in his official capacity will be dismissed.

Plaintiff also alleges that Sheriff Jenkins is liable under § 1983 in his individual capacity.  "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"  <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985) (quoting <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977)).  To make this showing, plaintiff must allege sufficient facts so that the Court may infer that Sheriff Jenkins had personal knowledge of and involvement in the alleged deprivation of Plaintiff's rights.  See <u>id.</u>  The Complaint does

13

not contain any allegations that Sheriff Jenkins was present at the incident or had any contact at all with Plaintiff.

In her Opposition, Plaintiff contends that Sheriff Jenkins' individual liability arises via his status as Hewitt-Angleberger's supervisor.[6]  To prevail under a § 1983 theory of supervisory liability, a plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. . .
>
> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. . . Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted).  Plaintiff has failed to plead sufficient facts to support a claim of supervisory liability because she has not alleged that Sheriff Jenkins had personal knowledge of any conduct of Hewitt-Angleberger that would have posed a

---

[6] Sheriff Jenkins cannot be held vicariously liable for the acts of Hewitt-Angleberger because, as stated supra, there is no respondeat superior liability under § 1983.

14

pervasive and unreasonable risk of constitutional injury to citizens, nor has she alleged deliberate indifference to such knowledge.

Though Plaintiff may point to general allegations that Sheriff Jenkins failed to adequately train, monitor and discipline Deputy Sheriffs with respect to police brutality, these allegations fail to provide any specifics with regard to Hewitt-Angleberger, the subordinate for whose misconduct Plaintiff seeks to hold Sheriff Jenkins accountable.  There are no facts pled that suggest Sheriff Jenkins knew Hewitt-Angleberger was a threat, nor allegations of past incidents involving Hewitt-Angleberger that could have provided Sheriff Jenkins with constructive notice of this fact.[7]

As Plaintiff has failed to allege facts that would allow the Court to infer that Sheriff Jenkins was personally involved with or had knowledge of the incident, or that Sheriff Jenkins knew or should have known about Hewitt-Angleberger's propensity to violate citizens' rights and failed to do anything to abate such risk, the § 1983 claims alleged against Sheriff Jenkins in his individual capacity will also be dismissed.

**ii.  State Tort Claims**

---

[7] As noted in footnote two, neither of the other two incidents of brutality alleged in the complaint involved Hewitt-Angleberger.

Plaintiff argues that the Complaint states tort claims against Sheriff Jenkins under Maryland common law and Articles 24 and 26 of the Maryland Declaration of Rights.  The only reference to Sheriff Jenkins in these Counts is in the ad damnum clauses, where Plaintiff requests that damages for each Count be awarded against all named Defendants, including Sheriff Jenkins. The Complaint does not specify a basis for Sheriff Jenkins' liability with respect to the intentional torts that form the basis for these Counts.

Moreover, even if these allegations can be construed as a claim for negligent supervision against Sheriff Jenkins, as Plaintiff appears to suggest in her Opposition, see Opp'n at 11, these claims must be dismissed because Sheriff Jenkins is entitled to immunity for such torts pursuant to the Maryland Tort Claims Act (MTCA), § 12-101, et seq., of the State Government Article of the Maryland Code.

The MTCA provides that state personnel are immune from suit for tortious conduct, including conduct that implicates intentional and constitutional torts, that is within the scope of their public duties and committed without malice or gross negligence.  See Lee v. Cline, 863 A.2d 297, 310 (Md. 2004) [8]

---

[8] Plaintiff makes the blatantly incorrect statement that Lee v. Cline does not apply to the intentional torts or violations of constitutional rights alleged by Plaintiff.  See Opp'n at 12. Plaintiff attempts to support this statement by citing to a

16

("Immunity under the [MTCA] . . . encompasses constitutional torts and intentional torts."); Md. Code Ann., State Gov't § 12-105.  Malice refers to "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud."  Id. at 311 (citing Shoemaker v. Smith, 725 A.2d 549, 559 (Md. 1999)).  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."  Barbre v. Pope, 935 A.2d 699, 717 (Md. 2007).

Sheriff Jenkins is protected by this statute, as "state personnel" includes "a sheriff or deputy sheriff of a county or Baltimore city."  See Md. Code Ann., State Gov't § 12-101(a)(6).[9]

---

portion of that opinion that discusses common law qualified immunity for public officials, which is clearly distinct from the statutory immunity Sheriff Jenkins has invoked pursuant to the MTCA.  See Lee, 863 A.2d at 306 ("There are . . . major differences between the policy underlying public official immunity and the policy underlying the immunity under the [MTCA] . . . judicial opinions dealing with the well-established limitations upon public official immunity furnish no authority for judicially creating similar limitations upon the broad statutory immunity granted by the [MTCA].")

[9] Plaintiff has cited cases in which a sheriff was treated as a local official instead of a state official in an apparent attempt to suggest that Sheriff Jenkins is not entitled to immunity under the MTCA.  These cases are inapposite, however, because they address the question of a sheriff's status for purposes of § 1983 liability.  As the torts alleged are governed

The complaint alleges that "at all times relevant [to the suit], [Sheriff Jenkins] was acting within the course and scope of his employment . . ." Compl. at ¶ 8. Additionally, the Complaint does not allege specific facts from which the Court could infer that Sheriff Jenkins acted with malice or gross negligence with respect to his supervision of Hewitt-Angleberger. Therefore, insofar as Plaintiff seeks to hold Sheriff Jenkins liable as Hewitt-Angleberger's supervisor, Sheriff Jenkins is protected from suit by the MTCA. As such, Counts IV through VII pled against Sheriff Jenkins will be dismissed.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss is GRANTED and Defendants County and Sheriff Jenkins will be dismissed form the suit. A separate order consistent with this memorandum will be issued.

/s/
_____
William M. Nickerson
Senior United States District Judge

DATED: April 19, 2012

---

by Maryland law, Maryland law regarding Sheriff Jenkins' status is dispositive.