IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIDGET M. MCDONNELL          *
                              *
v.                            *    Civil Action No. WMN-11-3284
                              *
DEPUTY KELLY                  *
HEWITT-ANGLEBERGER et al.     *
                              *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM**

Before the Court is Defendant Deputy Kelly Hewitt-Angleberger's Motion for Summary Judgment. ECF No. 37. The motion is fully briefed and ripe for review. Upon a review of the papers, facts, and applicable law, the Court determines (1) that no hearing is necessary, Local Rule 105.6, and (2) the motion will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On April 22, 2009, Defendant Deputy Kelly Hewitt-Angleberger responded to Plaintiff Bridget McDonnell's home to investigate a report, made by Ms. Andrea Longnecker, that Longnecker's two children had been kidnapped from Plaintiff's home.[1] Plaintiff informed Defendant that the children had not been kidnapped. Defendant thereafter indicated that Ms. Longnecker, who is Plaintiff's daughter, would be arrested for making a false report.

---

[1] The facts leading up to the kidnapping report are complicated, but are irrelevant to the resolution of the instant motion.

Shortly thereafter, another officer, Corporal Michael Ochoa, arrived at Plaintiff's home and asked her where the children were. Plaintiff, apparently confused as to what day it was, admitted that they had been left in her care, but did not know where they were. She mentioned that they could be in a number of places, including Hagerstown or Ocean City. The officers then asked Plaintiff to telephone Ms. Longnecker, after which Defendant stepped out of the house to, allegedly, witness and arrest Ms. Longnecker for driving on a suspended license.

When Ms. Longnecker arrived, she entered the home with Defendant and proceeded to have a heated argument with Plaintiff regarding the children's whereabouts, which remained, at that point, unresolved. At some point, Defendant and Ms. Longnecker went outside, while Plaintiff remained inside the house with Corporal Ochoa and another officer, Deputy Todd Joia. While Defendant was outside with Ms. Longnecker, Plaintiff recalled that the children were at church with one of her other daughters.

Shortly thereafter, Deputy Joia instructed Plaintiff to pack up her grandchildren's belongings, and to stay in the house while he took them out to Ms. Longnecker. Plaintiff complied with the instruction to gather the children's belongings but, upon learning that Ms. Longnecker had been driven to the scene by another individual, became concerned about the identity of

2

the driver of the vehicle.  She then put on a jacket and ran down the front steps of her house, yelling to Corporal Ochoa and Deputy Joia that she needed to see who was driving the car. Plaintiff recognized the driver as an individual who she believed to be a drug dealer, and she began yelling as much to the officers as she approached the vehicle.  At that point, Defendant approached Plaintiff, stepped between Plaintiff and the vehicle, and told Plaintiff to return to the house multiple times.  Defendant pushed Plaintiff in the chest while ordering Plaintiff to get back in the house.

The parties dispute what followed.  Plaintiff testified that, after being pushed, she turned around and asked Corporal Ochoa and Deputy Joia whether they had seen what occurred, that Defendant instructed her again to return to the house, and that Defendant pushed her again, this time very hard in the back, causing her to catch herself to prevent falling to the ground. After the second push, Plaintiff became angry, and testified that she "went up against" Defendant, although she claims not to have used her hands, and was immediately handcuffed.  Plaintiff claims that it was this alleged second push by Defendant which caused her to suffer a substantial neck injury that required her to undergo surgery in October 2009.

Defendant offered a different version of events.  She testified that after she pushed Plaintiff the first time,

3

Plaintiff punched her in her chest and then turned around to walk away, and that she then informed Plaintiff that she was under arrest and attempted to handcuff her.  According to Defendant, Plaintiff resisted being handcuffed, and Defendant required the assistance of another officer to do so.

Ultimately, Plaintiff was charged with failure to obey lawful orders, obstructing and hindering, and resisting arrest.  The charges were terminated when the State's Attorney entered a nolle prosequi.

Plaintiff filed the present suit against Defendant, the Board of County Commissioners for Frederick County, the State of Maryland, and Sheriff Charles Jenkins, alleging the following claims: (1) excessive force under 42 U.S.C. § 1983; (2) deliberate indifference to serious medical needs under 42 U.S.C. § 1983; (3) deprivation of federal rights under 42 U.S.C. § 1983; (4) assault and battery; (5) false imprisonment; (6) malicious prosecution; and (7) violation of Maryland constitutional rights under Articles 24 and 26 of the Maryland Declaration of Rights.  Plaintiff voluntarily dismissed the State of Maryland as a defendant and, on April 19, 2012, the Court dismissed Plaintiff's claims against the Board of County Commissioners for Frederick County and Sheriff Charles Jenkins.  Defendant has now moved for summary judgment on all counts.

## II. LEGAL STANDARD

Summary judgment is appropriate if the record before the court "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 377 U.S. 317, 322-23 (1986). See also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (noting that trial judges have "an affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial" (internal quotation marks omitted)). A fact is material if it might "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there is a genuine issue of material fact, the Court "views all facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md. 2011) (citing Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987)).

## III. DISCUSSION

Defendant has moved for summary judgment on all counts, claiming that her actions in physically preventing Plaintiff from approaching Ms. Longnecker were reasonable, conducted with lawful authority, and supported by probable cause. Therefore, Defendant claims that she is entitled to qualified immunity as

5

to Plaintiff's claim of excessive force, and statutory public official immunity for the state law claims. Plaintiff concedes that Defendant is entitled to summary judgment as to Count II. Even accepting the facts as set forth in the light most favorable to the Plaintiff, the Court determines that Defendant acted in an objectively reasonable manner and did not violate Plaintiff's Fourth Amendment Rights. Moreover, the Court determines that Defendant's actions were supported by probable cause. Defendant is therefore entitled to summary judgment on all counts.

### A. Count I – Excessive Force

In Count I, Plaintiff alleges that Defendant "deprived the Plaintiff of . . . clearly established rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution," specifically, "(a) the right to be free from the use of excessive and unreasonable force and seizure; (b) the right to be free from a deprivation of liberty without due process of law; and (c) the right to be free from summary punishment." ECF No. 1 at ¶ 40. Defendant argues that, as a police officer, she is entitled to qualified immunity because her actions were objectively reasonable under the circumstances.

"The doctrine of qualified immunity 'balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably.'" Meyers v. Baltimore Cnty., 713 F.3d 723, 730-31 (4th Cir. 2013) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Whether a defendant is entitled to qualified immunity is a question of law for the court. Knussman v. Maryland, 272 F.3d 625, 634 (4th Cir. 2001). The Court's determination is driven by two separate inquiries. First, the Court must decide "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the police officer's actions violated a constitutional right." Next, the Court must determine "whether the right at issue was 'clearly established' at the time of the officer's conduct." Meyers, 713 F.3d at 731 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)); see also Pearson, 555 U.S. at 236 (courts are not required to conduct the analysis in sequence established in Saucier). Accordingly, even if a plaintiff proves that an officer violated certain constitutional rights, that officer may still be entitled to qualified immunity "if a reasonable person in the officer's position 'could have failed to appreciate that his conduct would violate those rights.'" Meyers, 713 F.3d at 731 (quoting Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991)).

In Count I, Plaintiff asserts that Defendant violated her rights under the Fourth Amendment. "In relevant part, the

7

Fourth Amendment prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an arrest." Id. at 732 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The relevant inquiry "is one of 'objective reasonableness' under the circumstances." Graham, 490 U.S. at 399. The reasonableness of the force used is to "be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. Thus, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) (internal citation omitted).

Defendant's argument for summary judgment based on qualified immunity emphasizes the heated nature of Plaintiff's exchange with her daughter shortly before she was pushed by Defendant. ECF No. 37-1 at 14. She argues that her "intention in controlling the circumstances was to avoid a physical altercation between two individuals, both of whom had demonstrated volatile and highly emotional behavior in the period preceding the confrontation." ECF No. 37-1 at 15. With

8

regard to the first time she pushed Plaintiff, she asserts that she was "entitled to keep Plaintiff out of her personal space and away from the weapons on the officer's belt." Id. Although Defendant disputes that a second push occurred, she argues that, assuming that it did occur, the force used was not sufficient to rise to "constitutional dimensions" or so excessive that "a reasonable person in the officer's position could have failed to appreciate that her conduct would violate Plaintiff's constitutional rights." Id. at 14-15.

In her opposition, Plaintiff asserts that the situation at the time of the altercation was not nearly as tense as it had been during Plaintiff's initial argument with her daughter. She claims that she made clear her intent to determine who was operating the car in which Ms. Longnecker arrived and that "[t]here was absolutely no basis for Defendant to intercede physically." ECF No. 40-1 at 14. Rather, Plaintiff argues, "there was never any suggestion by anyone present that their argument was going to escalate into a physical altercation."

Plaintiff's argument, however, is divorced from the facts as they are presented through her own testimony. It is undisputed that Defendant was not in the house with Plaintiff prior to the confrontation. It is also undisputed that Plaintiff ran down the steps of her house toward the car in which Ms. Longnecker was seated. ECF No. 40-2 (Pl. Dep.) at

9

56:10-16. Moreover, Plaintiff testified that, as she approached the car, she was "yelling" "[s]he's [i.e., Ms. Longnecker is] with a drug dealer." Id. at 61:6 & 8-10. In these circumstances, the Court concludes that Defendant's actions, in pushing Plaintiff away from the vehicle in which Ms. Longnecker was seated, were objectively reasonable and therefore did not violate the Fourth Amendment. To the extent that Defendant's alleged second push of Plaintiff was not objectively reasonable, the Court concludes that Defendant is still entitled to qualified immunity because a reasonable officer in Defendant's position could have failed to appreciate that the amount of force applied after Plaintiff failed to comply with Defendant's lawful order to return to the house would violate Plaintiff's rights under the Fourth Amendment. Thus, the Court will grant Defendant's motion as it relates to Count I.

**B. Count III – Malicious Prosecution**

Plaintiff alleges in Count III that Defendant "plac[ed] and/or conspire[ed] to place fraudulent, false criminal charges against the Plaintiff for the purpose of (i) covering up the police misconduct alleged herein, and (ii) interfering with the Plaintiff's access to this Court." ECF No. 1 at ¶ 44. Plaintiff further alleges that Defendant's conduct "constitutes an actionable[] deprivation or an attempt to deprive the

10

Plaintiff of her federal causes of action arising under Title 42, Section 1983." Id.

Because Plaintiff has not produced any evidence supporting an allegation of conspiracy, this Court will grant summary judgment in favor of Defendant to the extent that Count III alleges any form of conspiracy by the Defendant. The Court will otherwise construe Plaintiff's allegation – as the parties appear to agree it should - as a claim for malicious prosecution under the Fourth Amendment.

The Fourth Circuit has held that an action for malicious prosecution brought under § 1983, like Plaintiff's present claim, "is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). One of the elements of common law malicious prosecution – and the one critically missing in this case – is the absence of probable cause to support a proceeding initiated against the plaintiff by the defendant. Id. at 260.

"Probable cause is defined as 'facts and circumstances' within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Carter v. Jess, 179 F. Supp. 2d 534, 545 (D. Md. 2001). Thus, "[t]o prove an

11

absence of probable cause, [Plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that she was violating [the relevant law]." Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). Even where probable cause does not exist, however, a defendant officer is still entitled to qualified immunity if his or her belief that probable cause existed was objectively reasonable. Id. at 367-68.

Here, Defendant claims that Plaintiff's conduct gave her probable cause to arrest Plaintiff for either (1) failure to obey a lawful order, or (2) obstructing and hindering the officers in the performance of their duties. ECF No. 37-1 at 17. Even if Defendant's asserted probable cause was insufficient, summary judgment is appropriate because Plaintiff did not adduce facts supporting her conclusion that no reasonable officer in Defendant's position would have made the same determination.

With regard to the charge of failing to obey a lawful order, Defendant was aware that Plaintiff had been told by the other deputies to stay in the house. ECF No. 41-1 (Def. Dep.) at 19:19-20:1. Moreover, she herself gave Plaintiff an order to return to the house so as to avoid a potential fight between Plaintiff and Ms. Longnecker. Id. In these circumstances, it is objectively reasonable for an officer, in Defendant's

12

position, to believe that Plaintiff had failed to obey the officers' orders when Plaintiff did not return to the house and instead engaged Defendant in a physical altercation.

Similarly, regarding the crime of obstructing or hindering[2] the officers in their investigation, Plaintiff's own testimony contradicts her argument that "nothing could be more factually belied by the evidence." ECF No. 40-1 at 19. Plaintiff testified that she told Defendant her grandchildren had not been kidnapped, but that she did not know where they were other than to say they were with one of her other daughters and that she was sorry Ms. Longnecker had wasted the officers' time for reporting them kidnapped. ECF No. 40-2 (Pl. Dep.) at 36:17-38:2. When faced with the prospect of missing children who had been entrusted to her care, Plaintiff's terseness and seemingly incomplete answers regarding their whereabouts could lead a reasonable officer in Defendant's position to conclude that Plaintiff was hindering or interfering with her investigation. Because Defendant's actions were objectively reasonable, Plaintiff does not have a claim for malicious prosecution under

---

[2] The Maryland common law crime of obstructing and hindering a police officer in the performance of his duty contains the following four elements: "(1) a police officer engaged in the performance of a duty; (2) an act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty; (3) knowledge by the accused of facts comprising element (1); and (4) intent to obstruct or hinder the officer by the act or omission constituting element (2)." Titus v. State, 32 A.3d 44, 47 (Md. 2011).

13

§ 1983. Summary judgment is therefore entered in Defendant's favor on Count III.

**C. Counts IV—VI – State tort law claims**

In Counts IV through VI, Plaintiff presents state tort law claims for assault and battery, false imprisonment, and malicious prosecution. Defendant's arguments in support of summary judgment on these claims are two-fold. First, she argues that, as a public official, she is entitled to statutory immunity under the Maryland Tort Claims Act, Md. Code, State Gov't Art. §§ 12-101 et seq., which provides that state personnel, including deputy sheriffs, id. at § 12-101(a)(6), are "immune . . . from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence . . . ." Md. Code, Cts. & Jud. Proc. Art., § 5-522(b); State Gov't Art. § 12-105 ("State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article."). Secondly, she argues that, because her actions were supported by probable cause, Plaintiff's state law claims cannot be sustained. Plaintiff, by contrast, argues that Defendant acted maliciously, both actually and impliedly, and without probable cause. Specifically, because Defendant stated on multiple occasions that "someone" was going to be arrested and sent to jail and threatened to

14

charge Plaintiff with kidnapping after being told that the children were with one of Plaintiff's other daughters, Plaintiff contends that Defendant's motives for instituting charges were "purely for reasons other than bringing an offender to justice" and therefore create a genuine issue of material fact regarding the existence of malice. ECF No. 40-1 at 20.

Even assuming that Plaintiff presented evidence creating a genuine issue of material fact regarding actual malice sufficient to defeat Defendant's statutory immunity, Plaintiff failed to present a prima facie case in support of her false imprisonment, malicious prosecution, and battery claims. Generally, a police officer is not liable for false imprisonment if the officer acted within his or her lawful authority in making the arrest. See, e.g., Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995). Similarly, in order to succeed on a claim for malicious prosecution, Plaintiff must prove, among other things, an absence of probable cause. DiPino v. Davis, 729 A.2d 354, 373 (Md. 1999). As noted supra, to prove an absence of probable cause, Plaintiff must allege a "set of facts which made it unjustifiable for a reasonable officer to conclude that [the Plaintiff] was violating [the relevant law]." Brown, 278 F.3d at 368. Because Defendant reasonably believed that Plaintiff was failing to obey her order to get back in the house and was obstructing or hindering the officers' investigation by

15

failing to provide pertinent information, Defendant's actions were supported by probable cause and she acted within her lawful authority in arresting Plaintiff. Defendant is therefore entitled to summary judgment on the false imprisonment and malicious prosecution claims.

Plaintiff's assault and battery claim must also fail. Liability for battery, in the absence of excessive force, "can only occur when there is no legal authority or justification for the arresting officer's actions." Williams v. Prince George's County, 685 A.2d 884, 889 (Md. Ct. Spec. App. 1996). Generally, whether an officer's conduct is legally justified turns on whether he or she acted reasonably. See, e.g., French v. Hines, 957 A.2d 1000, 1037 (Md. Ct. Spec. App. 2008). In considering the reasonableness of an officer's conduct for purposes of a battery claim, Maryland courts evaluate the officer's conduct, like a § 1983 excessive force claim, "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Richardson v. McGriff, 762 A.2d 48, 56 (Md. 2000) (quoting Graham, 390 U.S. at 396-97). Here, because the situation was heated, volatile, and rapidly evolving, see supra, Defendant's actions in pushing Plaintiff away from the vehicle in which Ms. Longnecker was seated were objectively reasonable. To the extent that Plaintiff's Count IV, entitled "State Tort Claim – Assault and Battery" is intended to present

16

a claim for assault, it is barred by the statute of limitations. See Md. Code Ann., Cts. & Jud. Proc. Art. § 5-105 (one-year limitations period).

### D. Count VII - State Constitutional Claims

Last, in Count VII, Plaintiff contends that Defendant's actions violated her rights under Articles 24 and 26 of the Maryland Declaration of Rights. Articles 24 and 26 of the Declaration of Rights "prohibit employment of excessive force during a seizure." Henry v. Purnell, 652 F.3d 524, 536 (4th Cir. 2011) (citing Randall v. Peaco, 929 A.2d 83, 89 (Md. Ct. Spec. App. 2007)). Claims presented under Articles 24 and 26 are analyzed under the same standard as Fourth Amendment claims. Id. Because the Court determines that Defendant did not violate Plaintiff's rights under the Fourth Amendment, see supra, it also determines that the facts, viewed in the light most favorable to Plaintiff, do not establish a violation of her rights under Articles 24 and 26. Thus, because Plaintiff's claims under § 1983 failed as a matter of law, so too must her claims under the Maryland Constitution.

## IV. CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment will be granted.

/s/  
William M. Nickerson  
Senior United States District Judge